## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DEBORAH GONZALEZ, APRIL
BOYER BROWN, LINDA LLOYD,
ADAM SHIRLEY, and ANDREA
WELLNITZ,

     Plaintiffs,

v.

BRIAN KEMP, Governor of the
State of Georgia, and BRAD
RAFFENSPERGER, Secretary of
State, State of Georgia,

     Defendants.

CIVIL ACTION FILE

NO. 1:20-CV-2118-MHC

## <u>ORDER</u>

    This case comes before the Court on a Motion for Preliminary Injunction

filed by Plaintiffs Deborah Gonzalez ("Gonzalez"), April Boyer Brown ("Brown"),

Linda Lloyd ("Lloyd"), Adam Shirley ("Shirley"), and Andrea Wellnitz

("Wellnitz") (collectively "Plaintiffs") [Doc. 5]. The Court has considered all of

the briefs filed by the parties[1] as well as oral argument held on June 25, 2020.

---

[1] Defendants' Motion for Leave to File Post Hearing Brief [Doc. 20] is
**GRANTED**. The Court has considered both sides' post-hearing briefs.

## I.     BACKGROUND

The Georgia Constitution provides for the creation of the office of district

attorney for each judicial circuit in the State of Georgia, stating in pertinent part as

follows:

> There shall be a district attorney for each judicial circuit, who shall be
> elected circuit-wide for a term of four years.  The successors of present
> and subsequent incumbents shall be elected by the electors of their
> respective circuits at the general election held immediately preceding
> the expiration of their respective terms.  District attorneys shall serve
> until their successors are duly elected and qualified.  Vacancies shall be
> filled by appointment of the Governor.

GA. CONST. art. VI, § VIII, ¶ I(a).  With respect to the procedure for the filling of

vacancies for the office of district attorney after a gubernatorial appointment,

O.C.G.A. § 45-5-3.2(a) provides as follows:

> In those instances where the Governor fills a vacancy in the office of
> district attorney pursuant to Article VI, Section VIII, Paragraph I(a) of
> the Constitution, the vacancy shall be filled by the Governor appointing
> a qualified individual to the office of district attorney who shall serve
> until January 1 of the year following the next state-wide general
> election which is more than six months after the date of the appointment
> of such individual, even if such period of time extends beyond the
> unexpired term of the prior district attorney.

O.C.G.A. § 45-5-3.2(a).[2]

---

[2] Prior to 2018, when the Governor filled a vacancy in the office of district
attorney: (1) if the vacancy occurred during the final 27 months of a term of office,
the appointee served for the remainder of the unexpired term, and (2) if the

On November 8, 2016, Ken Mauldin ("Mauldin") was elected to serve as the District Attorney for the Western Judicial Circuit in the State of Georgia for a four-year term beginning January 1, 2017, and continuing to December 31, 2020. Compl. [Doc. 1] ¶ 29. On July 11, 2019, Gonzalez announced her candidacy for the Western Judicial Circuit District Attorney position for the term beginning January 1, 2021. Id. ¶ 30. On July 31, 2019, Mauldin announced that he would not run for re-election for the next four-year term beginning January 1, 2021, but that he still intended to finish his current term as the Western Judicial Circuit District Attorney. Id. ¶ 31. However, on February 5, 2020, Mauldin announced his resignation as district attorney, to become effective on February 29, 2020. Id. ¶ 32.

After Mauldin announced his resignation, Defendant Governor Brian Kemp ("Governor Kemp") sought applications from those wishing to be considered for appointment to the vacancy caused by Mauldin's resignation, and set February 20, 2020, as the due date for submission of applications. Id. ¶ 33. Had Mauldin not

---

vacancy occurred prior to the final 27 months of a term of office, the appointee served until a special election was held on the same date of the general election following the date of the vacancy for the unexpired term of office. O.C.G.A. § 45-5-3. In either scenario, the Governor's appointee could serve no longer than the unexpired term of office of his or her predecessor.

resigned, the qualifying period for candidates for this district attorney position would have been between March 2-6, 2020. Id. ¶ 34. On March 6, 2020, Gonzalez attempted to qualify for the office of District Attorney for the Western Judicial Circuit, but she was notified by a representative of Defendant Secretary of State Brad Raffensperger ("Secretary Raffensperger") that there would be no election for this position. Id. ¶ 35. The Western Judicial Circuit District Attorney position remains vacant because Governor Kemp has not yet appointed a successor to Mauldin.[3] Id. ¶ 36.

Gonzalez resides in the Western Judicial Circuit and is a former member of the Georgia General Assembly, where she served as a state representative for Georgia House District 117 from November 2017 until January 2019. Id. ¶ 15. She is also a registered voter of the State of Georgia and intended to vote in the election for the District Attorney for the Western Judicial Circuit. Id. Brown, Lloyd, Shirley, and Wellnitz are all residents and registered voters within the Western Judicial Circuit and intended to vote in the same election.[4] Id. ¶¶ 16-19.

---

[3] The parties agreed at the June 25, 2020, hearing that Governor Kemp has not yet made an appointment to the position.

[4] Defendants do not challenge Plaintiffs' standing to bring this case in any of their briefs filed opposing Plaintiffs' Motion for Preliminary Injunction.

Plaintiffs filed this lawsuit under 42 U.S.C. § 1983 and O.C.G.A. § 9-6-20 on May 18, 2020.  The Complaint: (1) alleges a violation of the First and Fourteenth Amendment's fundamental rights to vote and candidacy because O.C.G.A. § 45-5-3.2 violates Article VI, Section VIII, Paragraph I(a) of the Georgia Constitution (Count I); (2) alleges a violation of the First Amendment's fundamental right to speech and association (Count II); and (3) seeks a petition for writ of mandamus directing Secretary Raffensperger to conduct an election for District Attorney for the Western Judicial Circuit for a term beginning on January 1, 2021 (Count III).  Id. ¶¶ 39-65.  Plaintiffs seek a preliminary injunction that would order Secretary Raffensperger to conduct the election for District Attorney for the Western Judicial Circuit on the same date as the 2020 general election currently set for November 3, 2020, and "to withhold application of any portion of O.C.G.A. § 45-5-3.2 in conflict with the Court's order."  Pls.' Mot. for Prelim. Inj. at 1-2.

## II.     LEGAL STANDARD

In order to obtain a preliminary injunction, a plaintiff must demonstrate: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that granting the relief

would not be adverse to the public interest.  Scott v. Roberts, 612 F.3d 1279, 1290

(11th Cir. 2010); Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26

(11th Cir. 2005).  A preliminary injunction is an extraordinary remedy which a

court should grant only when the movant clearly carries the burden of persuasion

as to each of the four prerequisites.  Four Seasons Hotels & Resorts, B.V. v.

Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003).  The decision whether

to grant preliminary injunctive relief is within the broad discretion of the district

court.  Democratic Party of Ga., Inc. v. Crittenden, 347 F. Supp. 3d 1324, 1339

(N.D. Ga. 2018).

## III.   ANALYSIS[5]

### A.    Substantial Likelihood of Success on the Merits

---

[5] In their original response to Plaintiffs' Motion for Preliminary Injunction, Defendants did not argue that the Court should abstain from ruling on any part of Plaintiffs' claims, especially as to whether O.C.G.A. § 45-5-3.2 violates the Georgia Constitution.  The Court has *sua sponte* considered whether it should abstain under R.R. Comm'n of Tex. v. Pullman Co., 312 U.S. 496 (1941), and finds that abstention would not be appropriate in this case.  See Siegel v. LePore, 234 F.3d 1163, 1174 (11th Cir. 2000) (en banc) (citations omitted) (declining to abstain under Pullman, stating that abstention is inappropriate when the plaintiffs allege a constitutional violation of their voting rights); Edwards v. Sammons, 437 F.2d 1240, 1244 (5th Cir. 1971) (reversing the District Court's decision to abstain under Pullman, holding that "the delay which follows from abstention is not to be countenanced in cases involving such a strong national interest as the right to vote"); League of Women Voters of Fla., Inc. v. Detzner, 354 F. Supp. 3d 1280, 1283 (N.D. Fla. 2018) ("The law is crystal clear in the Eleventh Circuit.  Federal

In Count I, Plaintiffs claim that failing to hold an election for the Western Judicial Circuit District Attorney position for the term beginning January 1, 2021, pursuant to O.C.G.A. § 45-5-3.2 violates the Due Process Clause of the Fourteenth Amendment because it violates Article VI, Section VIII, Paragraph I(a) of the Georgia Constitution.  Br. in Supp. of Pls.' Mot. for Prelim. Inj. ("Pls.' Br.") [Doc. 5-1] at 11-17.  Plaintiffs rely on <u>Duncan</u>, 657 F.2d 691,[6] for the proposition that failing to hold the election disenfranchises Plaintiffs "in violation of state law."  <u>Id.</u> at 16.

---

courts do not abstain when voting rights are alleged to be violated."); <u>see also</u> <u>Duncan v. Poythress</u>, 657 F.2d 691, 698 (5th Cir. 1981) ("The mere fact that this statute has never been interpreted by the state courts does not indicate sufficient ambiguity to justify Pullman abstention.").  In their Post Hearing Brief, Defendants assert that if the Court "were to conclude that Plaintiffs had raised a valid question as to whether O.C.G.A. § 45-5-3.2 may be in conflict with the Georgia Constitution, it should certify that question to the Georgia Supreme Court."  Defs.' Post Hr'g Br. [Doc. 20] at 6.  Because this Court concludes that the answer to the question of whether O.C.G.A. § 45-5-3.2 conflicts with the Georgia Constitution is clear, it declines Defendants' invitation.  <u>See</u> <u>Jordan v. Novastar Mortgage Inc.</u>, No. 1:08-CV-3587-CAP, 2009 WL 10681131, at *2 (N.D. Ga. Nov. 18, 2009) ("[T]he court concludes there is sufficient case law to support its decision and declines to vacate and certify the question to the Georgia Supreme Court.").

[6] In <u>Bonner v. City of Pritchard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

In Duncan, the United States Court of Appeals for the former Fifth Circuit considered a Georgia statute that required a special election to fill a position when a candidate who was elected to public office withdrew after the election but prior to taking office. Duncan, 657 F.2d at 693 (citing former Ga. Code § 34-1514). On November 4, 1980, Jesse Bowles was elected to a six-year term as associate justice of the Supreme Court of Georgia, but resigned his position after the election and the Governor appointed his replacement. Id. at 693-95. The court indicated that the sufficiency of the plaintiffs' complaint "turn[ed] on whether the state officials violated the Georgia special election statute, Ga. Code § 34-1514, and if so, whether this constituted a deprivation of federally protected rights." Id. at 700. The court answered in the affirmative:

> If the Georgia officials denied the Georgia electorate the right granted by state statute to choose a replacement for Justice Bowles, then we are faced with "patent and fundamental unfairness" in the electoral process. . . . It is fundamentally unfair and constitutionally impermissible for public officials to disenfranchise voters in violation of state law so that they may fill the seats of government through the power of appointment. We therefore hold that such action violates the due process clause of the fourteenth amendment.

Id. at 703-04.

Critical to this determination was the court's holding that Georgia officials violated a state statute providing for the manner of filling a vacancy once an

elected official withdrew from office.  See id. at 708 (emphasis added) ("[W]e hold that the due process clause of the fourteenth amendment affords protection against the disenfranchisement of a state electorate in violation of state election law."). There is no dispute in this case that Secretary Raffensperger has complied with O.C.G.A. § 45-5-3.2.  Duncan did not explicitly address whether there is a violation of federal due process if Georgia state election officials comply with a presumptively valid state election statute which then is found to violate the state constitution.  Moreover, neither party has provided a case directly on point and analogous to the issue at hand.

Nevertheless, the Court finds it appropriate to apply Duncan's holding here. The intuitive reading of Duncan's use of "state law" suggests that the Fourteenth Amendment is violated when a state elections official violates either a state statute or a provision of a state's constitution.  The Georgia Constitution itself indicates that it is the supreme law of the state: "Legislative acts in violation of this Constitution or the Constitution of the United States are void, and the judiciary shall so declare them."  GA. CONST. art. I, § II, ¶ V.  The Georgia Supreme Court also has held this explicitly: "The Georgia Constitution 'is the supreme State law[.]'"  Sherman v. Atlanta Indep. Sch. Sys., 293 Ga. 268, 275 (2013) (quoting Hammond v. Clark, 136 Ga. 313, 328 (1911)).  It follows that if a violation of a

Georgia state election statute gives rise to a due process right, the same would be true for a violation of the Georgia Constitution, the "supreme law of the state."

Thus, if failing to hold an election for the Western Judicial Circuit District Attorney position for the term beginning January 1, 2021, pursuant to O.C.G.A. § 45-5-3.2 violates Article VI, Section VIII, Paragraph I(a) of the Georgia Constitution, Plaintiffs are substantially likely to succeed on the merits of their Fourteenth Amendment due process claim under <u>Duncan</u>.

The Georgia Constitution provides as follows:

> There shall be a district attorney for each judicial circuit, who shall be elected circuit-wide for a term of four years. <u>The successors of present and subsequent incumbents shall be elected by the electors of their respective circuits at the general election held immediately preceding the expiration of their respective terms.</u> District attorneys shall serve until their successors are duly elected and qualified. Vacancies shall be filled by appointment of the Governor.

GA. CONST. art. VI, § VIII, ¶ I(a) (emphasis added). Under the plain language of this provision, individuals who presently or subsequently serve as incumbent district attorneys "shall be elected . . . at the general election held immediately preceding the expirations of their respective terms." When there is a vacancy in the office of district attorney, the Governor appoints an individual to fill that

vacancy, who becomes the incumbent district attorney.[7] The Georgia Constitution thus requires the appointed district attorney to run for re-election at the general election prior to the expiration of the existing term of office.

Prior to 2018, that is also what the applicable statute provided. See O.C.G.A. § 45-5-3, Ga. Laws 1996, p. 166, § 2 (amended 2018). If the district attorney was appointed during the final twenty-seven months of the term of office, that person served for the remainder of the unexpired term; if not, then that person would run in a special election for the unexpired term of office. Id. Either way, the term of the district attorney would be for four years and nothing the Governor did in terms of appointing persons to fill vacancies would alter that result.

In 2018, the General Assembly enacted the new Code Section 45-5-3.2 to provide that the person appointed by the Governor to fill a vacancy in the office of district attorney shall serve "until January 1 of the year following the next general state-wide election which is more than six months after the appointment[.]" O.C.G.A. § 45-5-3.2, Ga. Laws 2018, Act 291, § 1. Based upon this statute, if the Governor fills a vacancy by appointment less than six months before the next

_____

[7] At oral argument, counsel for Defendants agreed that the person appointed by the Governor to fill a vacancy in the office of district attorney would then become the incumbent.

general election, the subsequent incumbent does not run "at the general election held immediately preceding the expiration" of the four-year term, but at the general election held two years later. This is contrary to the express language contained in Article VI, Section VIII, Paragraph I(a) of the Georgia Constitution.

Defendants argue that O.C.G.A. § 45-5-3.2 does not run afoul of the Georgia Constitution because, upon Mauldin's resignation, "the terms of office associated with him cease to exist, and do not operate as a limitation on the appointee's new term of office." Defs.' Resp. to Pls.' Mot. for Prelim. Inj. ("Defs.' Resp.") [Doc. 11] at 6. Defendants find support for this proposition in cases which are inapposite to the current situation. In <u>Barrow v. Raffensperger</u>, No. S20A1029, 2020 WL 2485188 (Ga. May 14, 2020), the Georgia Supreme Court interpreted Article VI, Section VII, Paragraphs III and IV of the Georgia Constitution to hold that a judge who is appointed to an elective office "does not inherit and serve out the remainder of his or her predecessor's term of office; that unexpired term . . . is eliminated when the incumbent judge vacates the office." <u>Barrow</u>, 2020 WL 2485188, at *8 (internal quotations and citations omitted).

However, the court in <u>Barrow</u> construed a different constitutional provision that applies to vacancies upon the resignation of judges, which expressly provides that the appointee shall serve "until January 1 of the year following the next

general election which is more than six months after such person's appointment." GA. CONST. art. VI, § VII, ¶ IV. The applicable state constitutional provision that applies to district attorneys is Article VI, Section VIII, Paragraph I(a), which provides that "successors of present and subsequent incumbents shall be elected by the electors of their respective circuits at the general election held immediately preceding the expiration of their expired terms." GA. CONST. art. VI, § VIII, ¶ I(a). The constitutional provision for the period of service of appointed (or subsequent incumbent) district attorneys contains no reference to the provision concerning the term of office of judicial appointees. See id.

Defendants attempt to resolve this gap in logic by insisting that the Georgia Supreme Court has "expressly stated that this provision [that is, the provision affecting the term of office of judges appointed by the Governor] applies to *all* offices covered by the Judicial Article," including district attorneys. Defs.' Resp. at 8 (citing Perdue v. Palmour, 278 Ga. 217 (2004)). Defendants' statement is a mischaracterization of the facts and the holding of Palmour.

Palmour involved a judge of the State Court of Chattooga County, who resigned his position to qualify for the office of Solicitor-General of Chattooga County after the holder of that office qualified to run for State Court Judge in April 2004. Palmour, 278 Ga. at 217. After the end of the qualifying period, the

Governor, who had accepted the resignations of the two office holders, announced he would fill the vacancies by appointment, resulting in the cancellation of the 2004 elections for State Court Judge and Solicitor-General of Chattooga County. Id. at 217-18. The question before the Georgia Supreme Court was whether the appointees would serve only for the unexpired terms of their offices pursuant to Article V, Section II, Paragraph VIII(a) of the Georgia Constitution. Id. at 219-20. If so, the appointees would have had to run for election during the 2004 election cycle; if not, they would not have to run until "the next general election which is more than six months after" their appointment pursuant to Article VI, Section VII, Paragraph IV. Id. at 219.

The Georgia Supreme Court held that the so-called "six month provision" applied, which resulted in the cancellation of the 2004 elections for the two offices. Id. at 219-20. Because Article VI, Section VII, Paragraph IV of the Georgia Constitution applies to the filling of vacancies for both judges and solicitors-general, and is within the exception of Article V, Section II, Paragraph VIII(a) (public officers appointed by the Governor serve for the unexpired term "unless otherwise provided by law"), the newly appointed office holders did not have to run until 2006. Id. at 220-21.

Nothing in Palmour applies the provisions affecting the period of service of judicial appointees to the office of district attorney, which is separately delineated in Article VI, Section VIII of the Georgia Constitution. The reason that solicitors-general are treated the same way as judges for determining the time when gubernatorial appointees stand for election is that (1) there is no separate constitutional provision applicable to solicitors-general, and (2) the statute establishing the position of solicitor-general specifically provides that, in the event of a vacancy, "the Governor shall appoint a qualified person who shall serve as provided in Article VI, Section VII, Paragraphs III and IV of the Constitution." O.C.G.A. § 15-18-60. Defendants would have this Court insert language in the constitutional provision applicable to the term of service for subsequent incumbent district attorneys that does not exist.

Defendants also assert that because the office of district attorney appears in Article VI of the Georgia Constitution, which covers the Judicial Branch of state government, it somehow authorized the General Assembly to treat them the same way as judges with respect to the term of service of an appointee: "This statute . . . clears up any confusion about whether appointed District Attorneys are, like judges, meant to serve a new, six-month minimum term, as provided in Georgia Const. Art. VI, Sec. VII, Par. IV, rather than to serve out the remaining term of

their predecessor." Defs.' Resp. at 11 (footnote omitted). No confusion exists. Article VI, Section VIII, Paragraph I(a) does not reference the provision applicable to judicial appointees; rather, it separately provides that "successors of present and subsequent incumbents shall be elected . . . at the general election held immediately preceding the expiration of their respective terms." There is no "six month provision" applicable to district attorney appointees in the Georgia Constitution but a provision that mandates that successor district attorneys, be they elected or appointed, serve until the end of their four-year terms and stand for election prior to the expiration of those terms.

Based on the foregoing, the Court finds that Plaintiffs are substantially likely to succeed on the merits of their claim that, to the extent that O.C.G.A. § 45-5-3.2 operates to cancel the election for the District Attorney for the Western Judicial Circuit for a term beginning on January 1, 2021, it violates Article VI, Section VIII, Paragraph I(a) of the Georgia Constitution. Based upon <u>Duncan</u>, Plaintiffs also are substantially likely to succeed on the merits of their claim that the failure of the Secretary of State to set a qualifying period for such an election to be held at

the same time as the 2020 general election violates the Due Process Clause of the

Fourteenth Amendment.[8]

## B.    Irreparable Harm

Plaintiffs contend that failing to have the opportunity to vote in the 2020

election for the office of District Attorney for the Western Judicial Circuit

constitutes irreparable injury.  Pls.' Br. at 28 (citing Curling v Raffensperger, 397

F. Supp. 3d 1334, 1401 (N.D. Ga. 2019)).  In response, Defendants restate their

argument that because no constitutional violation has occurred, there has been no

actual injury.  Defs.' Resp. at 20-21.

---

[8] Because Plaintiffs have shown a substantial likelihood on the merits of their substantive due process claim in Count I, their remaining claims need not be addressed for purposes of preliminary injunctive relief.  See Ala. v. U.S. Army Corps of Eng'rs, 424 F.3d 1117, 1134 (11th Cir. 2005) ("To secure preliminary injunctive relief, a petitioner must demonstrate a substantial likelihood of prevailing on at least one of the causes of action he has asserted."); Arthur v. Myers, No. 2:11-cv-438-WKW, 2015 WL 668007, at *5 (M.D. Ala. Feb. 17, 2015) ("With Arthur having met his burden as to his Fourteenth Amendment equal protection claim, the court need not discuss whether he has shown a substantial likelihood of success on the merits of his Eighth Amendment claim."); You Fit, Inc. v. Pleasanton Fitness, LLC, No. 8:12-CV-1917-T-27EAJ, 2013 WL 521784, at *7 n.16 (M.D. Fla. Feb. 11, 2013) ("Because Plaintiffs are entitled to a preliminary injunction on their trademark infringement, trademark dilution, and unfair competition claims brought under the Lanham Act, their remaining claims need not be addressed.").

"The denial of an opportunity to cast a vote that a person may otherwise be entitled to cast – even once – is an irreparable harm." <u>Jones v Governor of Fla.</u>, 950 F.3d 795, 828 (11th Cir. 2020); <u>see also</u> <u>Wright v. Sumter Cty. Bd. of Elections and Registration</u>, 361 F. Supp. 3d 1296, 1302 (M.D. Ga. 2018) ("[T]he loss of a meaningful right to vote creates an irreparable harm.").  Because the Court concludes that the failure to conduct an election for the office of District Attorney for the Western Judicial Circuit violates the Georgia Constitution and thus the Fourteenth Amendment, Plaintiffs will suffer irreparable harm if the Court declined to enter a preliminary injunction due to the denial of their right to vote in the upcoming 2020 election.

### C.    Balance of Harms and Public Interest

The Court must also consider whether the threatened injury outweighs the potential harm that the relief would inflict on Defendants, and whether issuance of the preliminary injunction would not be adverse to the public interest.  <u>See</u> <u>Scott</u>, 612 F.3d at 1290.  Defendants argue that Plaintiffs have not shown any of these factors because any harm resulting from the cancellation of the election is offset by the stability offered by upholding an appointment system that already exists for

judicial offices and allows an appointee to prove his or her competence prior to running in the election.[9] Defs.' Resp. at 21.

However, Defendants have failed to show how the injury to voters by not conducting an election for the district attorney position is offset by any harm or burden to Defendants. See Ga. Coal. for the People's Agenda, Inc. v. Kemp, 347 F. Supp. 3d 1251, 1267-68 (N.D. Ga. 2018) (finding that the non-hypothetical risk of disenfranchisement of voters indicated irreparable harm and that any administrative burden "is minimal compared to the potential loss of a right to vote altogether by a group of people"). First, with respect to Governor Kemp, nothing in this Court's preliminary injunction order will prevent the Governor from exercising his right to appoint a person to fill the vacancy created by Mauldin's resignation, and the Court finds no harm to the Governor if his appointee must run for office in 2020 to maintain his or her seat.[10] Second, with respect to Secretary

---

[9] Defendants appear to have "copied and pasted" their argument as to the balance of equities from their brief in another case pending in this district involving the appointment of a state supreme court justice, as their argument discusses "the value of allowing an appointed justice to demonstrate their qualifications and performance" rather than an appointed district attorney. Defs.' Resp. at 21.

[10] The Court notes that had Governor Kemp made his appointment prior to May 3, 2020, an election would have occurred in November 2020 even under the terms of O.C.G.A. § 45-5-3.2 (and in all likelihood would have negated this lawsuit).

Raffensperger, his counsel has taken the position that as long as the relief comes in advance of the federal and state statutory deadlines for mailing absentee ballots to Georgia voters as well as administrative deadlines for the printing of ballots and instructing local election officials, the burden on the Secretary will be minimal. Hr'g Ex. 1 [Doc. 15].[11]

Moreover, the Court finds that granting the requested injunctive relief to reinstate the election for the Western Judicial Circuit District Attorney would not be adverse to the public interest. See Wright, 361 F. Supp. 3d at 1303 (alterations accepted, citation and quotation marks omitted) ("Finally, an injunction is in the public's interest because the public has an interest in having representatives elected in accordance with the Constitution.").

## IV.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiffs' Motion for Preliminary Injunction [Doc. 5] is **GRANTED**.

Defendants are **PRELIMINARILY ENJOINED** from following the portion of O.C.G.A. § 45-5-3.2 that would prevent an election for District Attorney

---

[11] The Court confirmed with Defendants' counsel at oral argument that the timetable set forth in Hearing Exhibit 1 was acceptable to Defendants should a preliminary injunction issue in this case.

for the Western Judicial Circuit on November 3, 2020.  Nothing contained in this Order shall prevent Governor Kemp from filling the existing vacancy in the office of District Attorney for the Western Judicial Circuit in accordance with Article VI, Section VIII, Paragraph I(a) of the Georgia Constitution; provided that if the Governor chooses to fill the vacancy by appointment, he must do so before the close of the special qualifying period for the special election for such position on November 3, 2020 if the appointee intends to run for the term of office beginning on January 1, 2021.

It is further **ORDERED** that Defendant Brad Raffensperger shall take all steps necessary to conduct the election for the office of District Attorney for the Western Judicial Circuit for the term beginning January 1, 2021, on the same date as the 2020 general election, currently set for November 3, 2020.

It is further **ORDERED** that the parties shall confer in good faith and endeavor to present to the Court a proposed consent order, no later than fourteen (14) days from the date of this Order, which sets forth the procedure for conducting a special election for the District Attorney for the Western Judicial Circuit on November 3, 2020, for a term beginning on January 1, 2021, including but not limited to the dates and times for a specially-set period for candidates to qualify to run in the special election and the incorporation of sufficient time for compliance

with deadlines for the printing and mailing of absentee ballots, including to those voters covered by the Uniformed and Overseas Citizens Absentee Voting Act, 42 U.S.C. § 1973ff, et seq.

It is further **ORDERED** that Defendants' Motion for Leave to File Post Hearing Brief [Doc. 20] is **GRANTED**.

**IT IS SO ORDERED** this 2nd day of July, 2020.

_____
MARK H. COHEN
United States District Judge