IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEBORAH GONZALEZ, APRIL
BOYER BROWN, LINDA LLOYD,
ADAM SHIRLEY, and ANDREA
WELLNITZ,

       Plaintiffs,

v.

BRIAN KEMP, Governor of the
State of Georgia, and BRAD
RAFFENSPERGER, Secretary of
State, State of Georgia,

       Defendants.

CIVIL ACTION FILE

NO. 1:20-CV-2118-MHC

## ORDER

This case comes before the Court on the following remaining motions:

(1)    Plaintiffs' Motion for Permanent Injunction [Doc. 58];

(2)    Defendants' Motion to Dismiss [Doc. 63];

(3)    Plaintiffs' Special Motion for Award of Costs and Attorneys' Fees
[Doc. 24];

(4)    Plaintiffs' Second Corrected Application for Attorneys' Fees
[Doc. 60]; and

(5)     Plaintiffs' Supplement to Fee Petitions Requesting Upward

Adjustment of Award [Doc. 65].

**I .    BACKGROUND AND PROCEDURAL HISTORY**

This lawsuit was filed on May 18, 2020, after Defendant Brad

Raffensperger, the Georgia Secretary of State, notified Plaintiff Deborah Gonzalez,

who attempted to qualify for election for District Attorney for the Western Judicial

Circuit, that there would be no such election to fill the vacancy created by the

resignation of the previous district attorney.  Compl. [Doc. 1].  Because Defendant

Governor Brian Kemp was in the process of considering applications to fill this

vacancy, Secretary Raffensperger determined that he would not permit individuals

to qualify for an election for the office of District Attorney for the Western Judicial

Circuit based upon O.C.G.A. § 45-5-3.2(a), which provides as follows:

> In those instances where the Governor fills a vacancy in the office of
> district attorney pursuant to Article VI, Section VIII, Paragraph I(a) of
> the Constitution, the vacancy shall be filled by the Governor appointing
> a qualified individual to the office of district attorney who shall serve
> until January 1 of the year following the next state-wide general
> election which is more than six months after the date of the appointment
> of such individual, even if such period of time extends beyond the
> unexpired term of the prior district attorney.

O.C.G.A. § 45-5-3.2(a).  Based on this provision, if Governor Kemp appointed

someone to fill the vacancy in the office of District Attorney for the Western

Judicial Circuit less than six months before the November 2020 General Election,
that appointee would not have to run for election until the next general election two
years later, which would extend the term of the former district attorney,
notwithstanding Article VI, Section VIII, Paragraph I(a) of the Georgia
Constitution, which provides for district attorneys to be elected circuit-wide for a
term of four years, and for their successors to be elected at the general election
"immediately preceding the expiration of their respective terms."  GA. CONST. Art.
VI, § VIII, ¶ I(a).

In their Complaint, Plaintiffs challenged the constitutionality of O.C.G.A.
§ 45-5-3.2 as violative of Article VI, Section VIII, Paragraph I(a) of the Georgia
Constitution as well as the First Amendment's fundamental right to speech and
association.  Compl. [Doc. 1] ¶¶ 39-61.  In their prayer for relief, Plaintiffs asked
this Court to issue an order directing Secretary Raffensperger to conduct an
election for the District Attorney for the Western Judicial Circuit for the four-year
term beginning on January 1, 2021, to declare O.C.G.A. § 45-5-3.2 null and void
as a violation of the United States and Georgia Constitutions, to preliminarily and
permanently enjoin Defendants from enforcing O.C.G.A. § 45-5-3.2, and for
reasonable attorneys' fees and costs.  Id., Prayer for Relief.

On May 25, 2020, Plaintiffs filed a Motion for Preliminary Injunction seeking to have this Court order Secretary Raffensperger to conduct the election for District Attorney for the Western Judicial Circuit on the same date as the 2020 general election, and "to withhold application of any portion of O.C.G.A. § 45-5-3.2 in conflict with the Court's order." Pls.' Mot. for Prelim. Inj. [Doc. 5] at 1-2. Defendants filed a brief opposing Plaintiffs' motion [Doc. 11], to which Plaintiffs filed a reply [Doc. 12]. This Court conducted a hearing on the motion for preliminary injunction on June 25, 2020. Tr. of Prelim. Inj. Hr'g [Doc. 40]. On July 2, 2020, this Court issued an Order finding that Plaintiffs were substantially likely to succeed on the merits of their claim that, to the extent O.C.G.A. § 45-5-3.2 operates to cancel the election for the District Attorney for the Western Judicial Circuit, for a term beginning on January 1, 2021, it violates Article VI, Section VIII, Paragraph I(a) of the Georgia Constitution, as well as finding that Plaintiffs demonstrated the other three factors necessary to support the issuance of a preliminary injunction. Gonzalez v. Kemp, 470 F. Supp. 2d 1343, 1347-50 (N.D. Ga. 2020). The Court granted Plaintiffs' Motion for Preliminary Injunction and preliminarily enjoined Defendants from following the portion of O.C.G.A. § 45-5-3.2 that would prevent an election for District Attorney for the Western Judicial Circuit on November 3, 2020. Id. at 1352. On July 17, 2020, this Court

4

issued an Order providing for the schedule for calling, qualifying for, and conducting the special election for the District Attorney of the Western Judicial Circuit [Doc. 32].

On July 14, 2020, Defendants filed an Emergency Motion for a Stay pending their appeal of this Court's preliminary injunction [Doc. 25] and, on July 15, 2020, Defendants filed a Notice of Appeal to the United States Court of Appeals for the Eleventh Circuit from this Court's July 2, 2020, Order granting preliminary injunctive relief [Doc. 26]. This Court denied Defendants' Emergency Motion for a Stay Pending Appeal [Doc. 30]. Defendants then sought an emergency stay of the injunction and an expedited appeal from the Eleventh Circuit, which granted their request to expedite the appeal, provided a schedule for the expedited filing of briefs, and set the case to be orally argued on August 14, 2020. Gonzalez v. Governor of the State of Ga., No. 20-12649-G (11th Cir. July 27, 2020) [Doc. 36]. However, on August 11, 2020, the Eleventh Circuit entered an order certifying the following question to the Supreme Court of Georgia pursuant to O.C.G.A. § 15-2-9: "Does O.C.G.A. § 45-5-3.2 conflict with Georgia Constitution Article VI, Section VIII, Paragraph I(a) (or any other provision) of the Georgia Constitution?" Gonzalez v. Governor of the State of Ga., 969 F.3d 1211, 1212 (11th Cir. 2020).

On October 8, 2020, after considering briefs and hearing argument, the

Supreme Court of Georgia concluded

> that the answer to the question is "yes" to the extent that O.C.G.A.
> § 45-5-3.2 authorizes a district attorney appointed by the Governor to
> serve beyond the remainder of the unexpired four-year term of the prior
> district attorney without an election as required by Article VI, Section
> VIII, Paragraph I(a) of the Georgia Constitution of 1983.
>
> ****
> Because Paragraph I(a) fixes a four-year term for district attorneys that
> a vacancy appointee simply steps into until a successor can be duly
> elected in the general election before that term expires, O.C.G.A. § 45-
> 5-3.2(a) cannot operate to change the length of that fixed term.  To the
> extent that O.C.G.A. § 45-5-3.2 provides otherwise, it is violative of the
> Georgia Constitution and may not be enforced.

Kemp v. Gonzalez, 849 S.E.2d 667, 673 (2020).  Having received the answer to its

certified question, the Eleventh Circuit then issued a decision on October 27, 2020,

finding that this Court did not abuse its discretion by finding that Plaintiffs

established all four factors governing the grant of a preliminary injunction and

affirmed that order.  Gonzalez v. Governor of Ga., 978 F.3d 1266, 1273 (11th Cir.

2020).

It is undisputed that, on November 3, 2020, a special election was held for

the position of District Attorney of the Western Judicial Circuit in compliance with

this Court's preliminary injunction.  Ms. Gonzalez received a plurality, but not a

majority, of the votes and a runoff election was conducted on December 1, 2020, in

6

accordance with O.C.G.A. § 21-2-501. According to the official results reported on the Secretary of State's website, Ms. Gonzalez received a majority of the votes in the runoff election. See https://results.enr.clarityelections.com/GA/107395/web.264614/#/summary (last visited Feb. 8, 2021). Ms. Gonzalez has taken the oath of office for a term beginning on January 1, 2021.

## II.    PLAINTIFFS' MOTION FOR PERMANENT INJUNCTION AND DEFENDANTS' MOTION TO DISMISS

Plaintiffs have moved for a permanent injunction barring the enforcement of O.C.G.A. § 45-5-3.2(a) "to the extent that it allows the Governor to appoint a district attorney to serve beyond the remainder of the unexpired four-year term of the prior district attorney." Pls.' Mot. for Permanent Inj. at 1. Defendants argue that Plaintiffs' claims are moot because the Georgia Supreme Court's determination in Plaintiffs' favor that O.C.G.A. § 45-5-3.2 is unconstitutional rendered Plaintiffs' remaining request for a permanent injunction into an unenforceable request for Defendants to merely "obey the law." Defs.' Resp. in Opp'n to Pls.' Mot. for Permanent Inj. [Doc. 59] at 2-3. Moreover, Defendants contend that Plaintiffs' claims are moot because the electoral process for the office of District Attorney for the Western Judicial Circuit has been completed. Id. at 3.

Defendants also filed a Motion to Dismiss Plaintiffs' Complaint as moot for the same reasons.  Defs.' Br. in Supp. of Their Mot. to Dismiss [Doc. 63-1] at 2-4.

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969).  To demonstrate that a case is moot, Defendants must show that both of the following conditions are satisfied: "(1) it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will occur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Los Angeles Cnty. v. Davis, 440 U.S. 625, 631 (1979) (quotations and citations omitted).  When events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiffs meaningful relief, the case is moot and must be dismissed.  See Jews for Jesus, Inc. v. Hillsborough Cnty. Aviation Auth., 162 F.3d 627, 629 (11th Cir. 1998) (citation omitted).  However, it is well-settled that a defendant's voluntary cessation of challenged conduct does not automatically moot the case; the case becomes moot only if the alleged wrongful behavior could not reasonably be expected to reoccur.  United States v. Askins & Miller Orthopaedics, P.A., 924 F.3d 1348, 1355-56 (11th Cir. 2019) (citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000)).

With respect to the election for the office of District Attorney for the

Western Judicial Circuit in 2020, Defendants are correct that there is no further

relief this Court could order: that election process has been completed, the election

results were certified, and Plaintiff Gonzalez, who won the election after a run-off,

took the oath of office for a new term beginning January 1, 2021.  However,

Plaintiffs not only sought relief with respect to the 2020 general election for the

office of District Attorney for the Western Judicial Circuit, they also asked for a

declaration that O.C.G.A. § 45-5-3.2 is unconstitutional and to permanently enjoin

Defendants from enforcing it.  Comp., Prayer for Relief.  This is not a situation

akin to those cases that hold that an injunction which merely instructs a defendant

to "obey the law" fails to satisfy Rule 65(d)'s specificity requirement and is

incapable of enforcement.  See Elend v. Basham, 471 F.3d 1199, 1209-10 (11th

Cir. 2006) (refusing to enter an injunction requiring the Secret Service to comply

with the First Amendment); Burton v. City of Belle Glade, 178 F.3d 1175, 1201

(11th Cir. 1999) (refusing to enter an injunction prohibiting a city from

discriminating on the basis of race).[1]  In this case, it is an existing law, O.C.G.A.

---

[1] Defendants cite Sec. & Exch. Comm'n v. Smyth, 420 F.3d 1225 (11th Cir. 2005) for the same proposition.  That case actually involved the issue of whether the district court should have granted a judgment to the Securities and Exchange Commission without a hearing.  In dicta, the court noted that a portion of the

§ 45-5-3.2(a), which is being challenged as unenforceable because it is unconstitutional.  There is no existing law to "obey;" in fact, it is the existing law which should not be obeyed because it is unconstitutional.

That said, there is a significant action which was taken subsequent to the entry of the preliminary injunction in this case which does moot Plaintiffs' motion for a permanent injunction, and that is the decision by the Supreme Court of Georgia in response to the Eleventh Circuit's certified question.  That decision clearly and unambiguously holds that O.C.G.A. § 45-5-3.2(a) violates Article VI, Section VIII, Paragraph I(a) of the Georgia Constitution to the extent that it operates to change the term of an appointed district attorney, and expressly states "[t]o the extent that O.C.G.A. § 45-5-3.2 provides otherwise, it is violative of the Georgia Constitution and may not be enforced." Kemp v. Gonzalez, 849 S.E.2d at 673 (emphasis added).  As the highest state appellate court has declared the unconstitutionality and enjoined the enforcement of O.C.G.A. § 45-5-3.2 based upon one of the specific grounds urged in the Complaint, there is no other remedy that could be ordered by this Court in a permanent injunction that has not already

---

injunctions previously entered in the case, which enjoined an individual from violating existing securities statutes and regulations, is the type of "obey the law" injunction that is unenforceable. Id., 420 F.3d at 1233 n.14.

been accomplished through the action of the Supreme Court of Georgia.  Neither

these Defendants nor any of their successors may enforce the provisions of

§ 45-5-3.2(a) so as to extend the term of office for a district attorney who is

appointed by the Governor to fill a vacancy less than six months prior to the next

general election.[2]

Accordingly, it is therefore **ORDERED** that Plaintiffs' Motion for

Permanent Injunction is **DENIED AS MOOT**, and Defendants' Motion to

Dismiss[3] is **GRANTED**.

## III.   PLAINTIFFS' SPECIAL MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

On July 14, 2020, Plaintiffs filed a Special Motion for Award of Attorneys'

Fees and Costs pursuant to 42 U.S.C. § 1988 [Doc. 24] for their success in

obtaining a preliminary injunction and, on July 31, 2020, a detailed specification in

support of that motion ("Specification") [Doc. 39].  Plaintiffs seek fees for their

two attorneys, Bruce Brown and Robin Joy Shahar, at the hourly rates of $625.00

---

[2] In this case, the Governor never appointed a replacement to serve as district attorney for the unexpired term.

[3] Plaintiffs filed no response to Defendants' Motion to Dismiss, meaning it is unopposed.  See LR 7.1(B), NDGa ("Failure to file a response [to the motion] shall indicate there is no opposition to the motion.").

and $520.00, respectively.  Specification at 6-10.  Mr. Brown and Ms. Shahar

submitted a detailed specification showing that they expended 85.5 and 83.75

hours, respectively, on this case for the period of time from May 3-July 30, 2020,

and, therefore, request the amount of $96,987.50 in attorneys' fees.  Id. at 3-4, 32-

33, 41-43.  Plaintiffs also seek $1,450.00 in costs for filing the Complaint and for

Westlaw research.  Id. at 10.

In their response, Defendants do not dispute that Plaintiffs are prevailing

parties entitled to fees and expenses, but assert that the amount of fees and

expenses requested is unreasonable.  Defs.' Resp. in Opp'n to Pls.' Mot. for

Att'ys' Fees ("Defs.' Opp'n") [Doc. 51].  Defendants seek a reduction of Mr.

Brown's and Ms. Shahar's hourly rates by twenty-five percent (25%), a reduction

in the total amount of fees claimed by fifty percent (50%), and a disallowance of

the claim for Westlaw research expenses.  Id. at 10-17.

Under the "American Rule," litigants "are ordinarily required to bear their

own attorney's fees" and a prevailing party is not entitled to recover an award of

attorney's fees absent express statutory authority.  Buckhannon Bd. & Care Home

v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 602 (2001) (citing

Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257 (1975))

("[A]bsent statute or enforceable contract, litigants pay their own attorneys'

fees."); <u>Johnson v. Fla.</u>, 348 F.3d 1334, 1350 (11th Cir. 2003) ("Under the 'American Rule,' the default assumption is that each party is responsible for its own legal fees, and thus fees ordinarily will not be awarded to the prevailing party without express statutory authority.").  "The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and fees." <u>Norman v. Hous. Auth. of City of Montgomery</u>, 836 F.2d 1292, 1303 (11th Cir. 1988).

Prevailing parties in civil rights actions are entitled to an award of attorney's fees pursuant to 42 U.S.C. § 1988.  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 429 (1983).  Having succeeded in obtaining a preliminary injunction to prevent the enforcement of O.C.G.A. § 45-5-3.2(a) with respect to the election for the District Attorney for the Western Judicial Circuit, there is no dispute that Plaintiffs are prevailing parties for purposes of an award of attorney's fees under § 1988.  <u>See, e.g.</u>, <u>Lefemine v. Wideman</u>, 568 U.S. 1, 4 (2012) (finding the plaintiff to be a prevailing party by obtaining an injunction to terminate a continuing threat of criminal sanctions for engaging in public protest activity); <u>Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.</u>, 489 U.S. 782, 791-92 (1989) ("If the plaintiff succeeded on any significant issue in litigation which achieved some of the benefit

the parties sought in bringing suit, the plaintiff has crossed the threshold to a fee

award of some kind [pursuant to § 1988].") (quotation marks and citation omitted).

When assessing an award of attorneys' fees, a district court must calculate

what the Supreme Court has labeled the "lodestar" amount.  See Perdue v. Kenny

A. ex rel. Winn, 559 U.S. 542, 551 (2010) ("[T]he lodestar figure has, as its name

suggests, become the guiding light of our fee-shifting jurisprudence.") (quoting

City of Burlington v. Dague, 505 U.S. 557, 562 (1992)).  The method for

determining this amount has been clearly established in the Eleventh Circuit:

> In calculating a reasonable award of attorneys' fees, a district court must first calculate the "lodestar" amount—the number of hours reasonably expended multiplied by a reasonable hourly rate.  Am. Civil Liberties Union v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999).  A reasonable hourly rate is the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994) (quotation omitted) (awarding attorneys' fees pursuant to 42 U.S.C. § 1988).  The district court is "itself an expert" on the reasonableness of hourly rates and "may consider its own knowledge and experience on the topic."  Id. (quotation omitted).  Further, the fee applicant must provide the district court with detailed evidence about the reasonable hourly rate, as well as records to show the time spent on the different claims and the general subject matter of the time expenditures set out with particularity.  Barnes, 168 F.3d at 427.  In addition, a "well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case."  Id. (quotation omitted)

<u>Dial HD, Inc. v. ClearOne Commc'ns Inc.</u>, 536 F. App'x 927, 930-31 (11th Cir.
2013). "The court may then adjust the lodestar to reach a more appropriate
attorney's fee, based on a variety of factors, including the degree of the plaintiff's
success in the suit." <u>Assoc. of Disabled Americans v. Neptune Designs, Inc.</u>, 469
F.3d 1357, 1359 & n.1 (11th Cir. 2006).

### A.    Reasonable Hourly Rate

A reasonable hourly rate is "the prevailing market rate in the relevant legal
community for similar services by lawyers of reasonably comparable skills,
experience, and reputation." <u>Dillard v. City of Greensboro</u>, 213 F.3d 1347, 1354
(11th Cir. 2000) (citation and quotation omitted). A plaintiff can establish the
reasonableness of hourly rates "by producing either direct evidence of rates
charged under similar circumstances or opinion evidence of reasonable rates."
<u>Duckworth v. Whisenant</u>, 97 F.3d 1393, 1396 (11th Cir. 1996) (citing <u>Norman</u>,
836 F.2d at 1299). What an attorney charges his or her paying clients "is powerful,
and perhaps the bast, evidence of his [or her] market rate; that is most likely to be
what he [or she] is paid as 'determined by supply and demand.'" <u>Dillard</u>, 213 F.3d
at 1354-55 (quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 895 n.11 (1984)).[4]

---

[4] The Court has also considered the factors set forth in <u>Johnson v. Ga. Highway
Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974), <u>abrogated on other grounds</u>, <u>Blanchard</u>

Mr. Brown, a thirty-five year practicing litigation attorney who has been in

solo practice since 2012, supports Plaintiffs' request for a $625.00 hourly rate

based upon his hourly rate of $605.00 charged in 2012 when he was last a member

of the law firm McKenna, Long & Aldridge, and the declaration of Robert B.

Remar, an experienced litigator in the Metropolitan Atlanta area who knew Mr.

Brown's work.[5]  Specification at 6, 21-26.  Mr. Brown does not indicate in the

Specification or his declaration filed in this case what he has charged his clients in

the eight years he has been in solo practice or, for that matter, what his hourly rate

---

v. Bergeron, 489 U.S. 87, 109 (1989), which the Eleventh Circuit has indicated
remain viable in assessing a reasonable hourly rate.  See Loranger, 10 F.3d at 781
n.6 ("Although its balancing test has since been displaced by the lodestar formula,
we have expressed our approval of district courts considering the Johnson factors
in establishing a reasonable hourly rate.").  The Johnson factors include: 1) the
time and labor required; 2) the novelty and difficulty of the questions; 3) the skill
requisite to perform the legal services properly; 4) the preclusion of other
employment by the attorney due to acceptance of the case; 5) the customary fee in
the community; 6) whether the fee is fixed or contingent; 7) time limitations
imposed by the client or circumstances; 8) the amount involved and the results
obtained; 9) the experience, reputation, and the ability of the attorney; 10) the
"undesirability" of the case; 11) the nature and length of the professional
relationship with the client; and 12) awards in similar cases.  Johnson, 488 F.2d
at 717-19.

[5] The declaration of Robert B. Remar was originally filed in October 2019, in the
case of Curling v. Raffensperger, No. 1:17-CV-2989-AT (N.D. Ga. removed Aug.
8, 2017), Doc. 630.

16

was at the time of his representation of Plaintiffs in this action.  Decl. of Bruce P.

Brown [Doc. 39 at 15-19].

However, in a Declaration filed in this Court on June 7, 2019, in Martin v.

Raffensperger, No. 1:18-CV-4776-LMM, another elections-related case, Mr.

Brown reported his "current hourly rate" as $550.00.  Id., Decl. of Bruce P. Brown

[Doc. 91-1] ¶ 10.  United States District Judge Leigh Martin May found this hourly

rate to be reasonable.  Martin v. Raffensperger, No. 1:18-CV-4776-LMM, 2019

WL 7593891, at *5 (N.D. Ga. July 24, 2019).  Here, Plaintiffs attempt to explain

this discrepancy by noting that the work in Martin was performed in late 2018 and

the $625.00 rate they now seek "reflects a mere 4.2% increase per year."[6]  Pls.'

Reply Br. in Supp. of Special Mot. for Att'ys' Fees and Costs ("Pls.' Reply")

[Doc. 57] at 6.  There is a problem with this explanation.  Mr. Brown represents in

his reply brief that he charged $550 per hour for work performed in 2018, and his

declaration in Martin reports that "his current hourly rate" as of the date of its

---

[6] Plaintiffs' math appears off.  Even assuming that $550.00 was Mr. Brown's
hourly rate in calendar year 2018, two 4.2% increases for calendar years 2019 and
2020 would result in an hourly rate of $597.00, not $625.00.  And the analogy to
what Mr. Brown's former law firm charged for his services in 2012 is not relevant
because he is now a solo practitioner who charged his clients $550.00 per hour
many years afterwards.

filing, which was for calendar year 2019, was $550.00.  Notably, Mr. Brown does

not now indicate the hourly rate charged to his clients in 2020, when the work was

performed in this lawsuit.  This Court presumes his current hourly rate for his

paying clients remains $550.00, which is the best evidence of his market rate.

Dillard, 213 F.3d at 1354-55.  Thus, the Court finds that $550.00 is a reasonable

hourly rate for Mr. Brown's services in this case.[7]

Ms. Shahar, who has practiced law for nearly thirty years, mostly with the

City of Atlanta Department of Law, supports her fee request with her prior

experience litigating § 1983 cases.  Specification at 6-7.  As to the hourly rate for

---

[7] Defendants' argument that the Court should reduce Mr. Brown's hourly rate to
$468.75, or a 25% reduction from the claimed $625.00 hourly rate, is without
merit.  Defendants present no support for this as the prevailing market hourly rate.
Based on the Court's experience of reasonable hourly rates for a case of this type
in the relevant market with an attorney of Mr. Brown's experience, the 25%
reduction sought by Defendants is not reasonable.  Defendants also contend that
this Court should consider the amount paid by the State Law Department for work
performed by its Special Assistant Attorneys General in arriving at a reasonable
hourly rate.  But it is well-known that the State Law Department's hourly rates are
not evidence of the relevant market for legal services because they are routinely set
well below those market rates.  Attorneys accept these appointments with rates
well below what those attorneys charge their clients for legal services based upon
the privilege of being appointed a Special Assistant Attorney General and
representing the public interest.  Finally, while Defendants now claim that this case
was "straightforward," it involved an issue of first impression, the results obtained
were excellent, and Defendants actively opposed Plaintiffs until the decision of the
Supreme Court of Georgia.

Ms. Shahar, Plaintiffs do not indicate what hourly rate Ms. Shahar currently

charges any paying clients.  Since her retirement from the City of Atlanta, Ms.

Shahar has mostly performed pro bono work at a reduced hourly rate.[8]  Id. at 7.  In

support of her request for a $520.00 hourly rate, she cites to that same rate awarded

to Gerald Weber and Daniel Grossman in Anderson v. City of Atlanta, No. 1:11-

CV-3398-SCJ (May 13, 2015, Order [Doc. 31]), and in Calhoun v. Pennington,

No. 1:09-CV-3286 (May 19, 2015, Order [Doc. 289]).  Specification at 37.  As

represented in the declarations filed in those cases, Mr. Weber has been the Legal

Director of the American Civil Liberties Union of Georgia for well over twenty

years as well as a Senior Attorney for the Southern Center for Human Rights, and

Mr. Grossman was involved in a series of cases relating to the practices of the

Atlanta Police Department.

　　　Defendants critique Ms. Shahar's analogy to the work of those two attorneys

because their expertise is broader than that of Ms. Shahar.  While that may be true,

the Court is aware that Ms. Shahar is a well-respected lawyer with significant

---

[8] The Eleventh Circuit has recognized that in areas of legal practice where an attorney has represented the underprivileged, it is often "virtually impossible to establish a prevailing market rate for such services."  Norman, 836 F.2d at 1300.  It is permissible, in such situations, to provide evidence of reasonable practice rates in analogous practice areas.  See Duckworth, 97 F.3d at 1396.

experience in defending the City of Atlanta in complex litigation involving

constitutional issues over a twenty-six year period.  The Court finds that $475.00 is

a reasonable hourly rate for Ms. Shahar.

### B.   Reasonable Number of Hours

With respect to documenting the appropriate number of hours spent on a

case, the Eleventh Circuit has stated that counsel for the prevailing party

> should have maintained records to show the time spent on the different
> claims, and the general subject matter of the time expenditures ought to
> be set out with sufficient particularity so that the district court can
> assess the time claimed for each activity. . . . A well-prepared fee
> petition also would include a summary, grouping the time entries by the
> nature of the activity or stage of the case.

Barnes, 168 F.3d at 427 (quoting Norman, 836 F.2d at 1303).  And the Court must

bear in mind "that the measure of reasonable hours is determined by the

profession's judgment of the time that may be conscionably billed . . . not the least

time in which it might theoretically have been done."  Norman, 836 F.2d at 1306.

In opposing the number of hours claimed, Defendants have an obligation to make

specific and "reasonably precise' objections and proof concerning hours they want

excluded from any award.  Yule v. Jones, 766 F. Supp. 2d 1333, 1341 (N.D. Ga.

2010) (citing Hensley, 461 U.S. at 428).

Defendants seek a fifty percent across-the-board reduction in the number of hours spent by Mr. Brown and Ms. Shahar because of their contention that the amount of time spent on the following tasks was unreasonable: (1) 10.55 hours for pre-filing meetings with clients and co-counsel and research; (2) 11 hours for preparing the Complaint; (3) 104.25 hours[9] spent on matters related to the filing of the motion for preliminary injunction, response, reply, and post-hearing briefs, and the hearing on the motion; (4) 17.65 hours for opposing Defendants' motion for stay and preparing the joint order for the special election schedule; and (5) 18.8 hours for preparing the motion and detailed specification for fees and costs. Defs.' Opp'n at 10-16.

The Court has reviewed the itemized time entries for both Mr. Brown [Doc. 39 at 32-33] and Ms. Shahar [Doc. 39 at 41-43] and finds the hours claimed to be reasonable except for the following: (1) the total of 18 hours requested for the preparation of the Complaint is excessive; the Court reduces the hours requested by twenty-five percent (leaving a total of 5.25 hours for Mr. Brown and 8.25 hours for Ms. Shahar); (2) the total of 31.8 hours requested for preparing the

---

[9] Defendants assert that Plaintiffs' counsel are seeking 110.25 hours for these tasks, but the Court's addition totals 104.25 hours.

fourteen-page reply brief (nearly the amount of time spent on preparing the initial motion and brief) in support of the motion for preliminary injunction is excessive; the Court reduces the hours requested by fifty percent (leaving a total of 10.4 hours for Mr. Brown and 5.5 hours for Ms. Shahar); (3) the total of 10.4 hours requested for preparing the Special Motion for Attorney's Fees is excessive; the Court reduces the hours requested by twenty-five percent (leaving a total of 5.55 hours for Mr. Brown and 2.25 hours for Ms. Shahar); (4) the total of 6.5 hours requested for the preparation of Ms. Shahar's Specification is excessive; the Court reduces the hours requested by fifty percent (leaving a total of 3.25 hours for Ms. Shahar); and (5) the total of 17.65 hours requested for preparing the nine-page brief in opposition to Defendant's Motion to Stay Pending Appeal and preparation of the Joint Order is excessive; the Court reduced the hours requested by fifty percent (leaving a total of 4.95 for Mr. Brown and 3.90 for Ms. Shahar).

Following these reductions, the award of attorneys' fees for the work spent in the district court is summarized below:

| TASKS | BROWN | SHAHAR | TOTAL FEE |
|---|---|---|---|
| Pre-Filing Activities | 3.30 | 7.25 | $5,258.75 |
| Complaint | 5.25 | 8.25 | $6,806.25 |

| PI Motion & Brief | 15.80 | 21.00 | $18,665.00 |
|---|---|---|---|
| Supplemental Brief | 0.70 | 4.25 | $2,403.75 |
| PI Reply Brief | 10.40 | 5.50 | $8,332.50 |
| Hearing | 9.20 | 3.75 | $6,841.25 |
| Post-Hearing Brief | 9.50 | 8.25 | $9,143.75 |
| Special Motion for Fees | 5.55 | 2.25 | $4,121.25 |
| Brief Opposing Motion to Stay; Joint Order | 4.95 | 3.90 | $4,575.00 |
| Detailed Specification | 1.90 | 3.25 | $2,588.75 |
| **TOTAL HOURS** | **66.55** | **67.65** | **134.2** |
| **TOTAL FEE -Brown at $550 -Shahar at $475** | **$36,602.50** | **$32,133.75** | **$68,736.25** |

## C.   Costs

Defendants object to the $1,050.00 in costs for Westlaw research, Defs.' Opp'n at 16-17, but Plaintiffs in their reply agree to withdraw that request. Pls.' Reply at 15. Defendants do not object to the awarding of the $400.00 filing fee claimed by Plaintiffs.

Based on the foregoing, the Court awards a total of $69,136.25 in attorneys' fees and costs for the portion of this case that was argued in this Court.

23

## IV.   PLAINTIFFS' SECOND CORRECTED APPLICATION FOR ATTORNEYS' FEES

On December 8, 2020, the Eleventh Circuit transferred Plaintiffs'

Application for Attorneys' Fees for their Eleventh Circuit appeal to this Court for

consideration.  Gonzalez v. Governor of the State of Ga., No. 20-12649-G (11th

Cir. Dec. 8, 2020) [Doc. 60].  Plaintiffs seek a total of $50,973.50 for their

appellate fees, based on the hourly rates sought in this Court for Mr. Brown and

Ms. Shahar, multiplied by a total of 89.4 hours (41.9 hours for Mr. Brown and 47.5

hours for Ms. Shahar).  Second Corrected Appl. For Att'ys' Fees at 4-10.

Defendants do not contest that Plaintiffs are entitled to an award of appellate

attorneys' fees under § 1988[10] but make the same arguments against the hourly rate

sought by Plaintiffs and argue that there should be an across-the-board reduction of

"no less than 25% and up to 75%" for "redundant, excessive, and unsuccessful

---

[10] Defendants initially attempt to argue that there is no pending fee request in this
Court because Plaintiffs' appellate fees request was denied as moot by the
Eleventh Circuit.  Defs.' Resp. to Pls.' Supp. to Fee Pets. at 1 n.1 (citing Doc. 60).
However, the Eleventh Circuit transferred the consideration of appellate fees to
this Court in that same order.  It would appear a waste of both attorney and judicial
resources to compel Plaintiffs to file the same application in this Court that they
have previously filed in the Eleventh Circuit.

work performed by Plaintiffs' Counsel." Defs.' Resp. to Pls.' Supp. to Fee Pets.

[Doc. 67] at 2-6.

Under Eleventh Circuit Rule 39-2,

An application for attorney's fees must be supported by a memorandum showing that the party seeking attorney's fees is legally entitled to them. The application must also include a summary of work performed, on a form available from the clerk, supported by contemporaneous time records recording all work for which a fee is claimed. An affidavit attesting to the truthfulness of the information contained in the application and demonstrating the basis for the hourly rate requested must also accompany the application. Exceptions may be made only to avoid an unconscionable result. If contemporaneous time records are not available, the court may approve only the minimum amount of fees necessary, in the court's judgment, to adequately compensate the attorney.

11th Cir. R. 39-2(b).

## A.    Reasonable Hourly Rates

For the reasons previously discussed, the Court finds that hourly rates of

$550.00 for Mr. Brown and $475.00 for Ms. Shahar are reasonable.

## B.    Reasonable Number of Hours

The Court has reviewed the dockets of the Eleventh Circuit and the Supreme

Court of Georgia with respect to the filings made by Plaintiffs, and finds that the

number of hours sought for certain of the tasks listed in the detailed specification

are excessive. First, a significant portion of Appellees' Brief in Opposition to the

Emergency Motion for Stay of Injunction incorporated material almost verbatim from the opposition brief filed by Plaintiffs in this Court, as well as incorporating some other arguments previously made in other briefs. However, Defendants did raise new contentions in support of their motion in the Eleventh Circuit which Plaintiffs responded to. The Court reduces the number of hours for this task by 25%. The same applies for the Appellees' Brief filed in the Eleventh Circuit which incorporates many arguments previously made in both the brief in support of their motion for preliminary injunction and reply brief in the district court. The Court also reduces the number of hours for this task by 25%. Finally, Plaintiffs request a total of thirteen hours for preparation of the motion to transfer consideration of attorneys' fees to this Court. But this amounted to just over four pages containing a minimal amount of research. The Court reduces the number of hours for this task by 75%. With respect to the time requested for the proceedings in the Supreme Court of Georgia following the Eleventh Circuit's certified question, the Court reduces the number of hours for brief preparation by 25% but does not reduce the hours spent preparing for oral argument, which the Court finds reasonable.

Following these reductions, the award of attorneys' fees for the work spent in the Eleventh Circuit and Supreme Court of Georgia is summarized below:

| TASKS | BROWN | SHAHAR | TOTAL FEE |
|---|---|---|---|
| Responding to Motion to Stay | 5.00 | 4.85 | $5,053.75 |
| Appellees' Brief Eleventh Circuit | 9.45 | 9.95 | $9,923.75 |
| Appellees' Brief Ga. Supreme Ct. | 5.55 | 7.90 | $6,805.00 |
| Oral Argument Ga. Supreme Ct. | 9.20 | 5.25 | $7,553.75 |
| Post-Argument Briefing Ga. Supreme Ct. | 0 | 3.75 | $1,781.25 |
| Appellees' Brief to Transfer Eleventh Circuit | 1.5 | 1.75 | $1,656.25 |
| **TOTAL HOURS** | **30.7** | **33.45** | **64.15** |
| **TOTAL FEE -Brown at $550 -Shahar at $475** | **$16,885.00** | **$15,888.75** | **$32,773.75** |

## V.   PLAINTIFFS' SUPPLEMENT TO FEE PETITION REQUESTING UPWARD ADJUSTMENT OF AWARD

Plaintiffs seek an upward adjustment of the lodestar of fifteen percent (15%) based upon the exceptional results obtained in this case. Pls.' Supp. to Fee Pet. at 2. Although they admit that such adjustments are "rare," Plaintiffs point to the expedited manner in which the case was litigated, the exemplary quality of Plaintiffs' counsel, and the "unusually difficult circumstances" of the case. Id. at 2-6. Defendants oppose the request, arguing that Plaintiffs have failed to

produce evidence supporting an upward adjustment of the lodestar.  Defs' Resp. to Pls.' Supp. to Fee Pets. [Doc. 66].

In Perdue v. Kenny A., the Supreme Court of the United States revisited the question of whether the calculation of an attorney's fee based upon the lodestar may be increased due to superior performance and results.  The Court answered the question in the affirmative but only in a few, rare circumstances:  (1) "where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value, as demonstrated in part during the litigation; " (2) "if the attorney's performance included an extraordinary outlay of expenses and the litigation is exceptionally protracted;" or (3) when there are "extraordinary circumstances in which an attorney's performance involves exceptional delay in the payment of fees."  Id., 559 U.S. at 554-56.  The Court reiterated its previous holdings that the lodestar measure yields a presumptively reasonable fee, the fee applicant has the burden to produce "specific evidence' to support the enhancement, and enhancements may be awarded only in "rare" and "exceptional" circumstances.  Id. at 552-53 (citations omitted).

Plaintiffs have failed to meet their burden to support an upward enhancement to the lodestar in this case.  First, the hourly rate awarded by the

28

Court in this case does measure Plaintiffs' attorneys' true market value.  Mr.

Brown has submitted both argument and a prior declaration that he is paid $550.00

for representing his clients.  This is the precise hourly rate awarded by the Court.

There is also no evidence before the Court that Ms. Shahar's hourly rate of

$475.00 does not measure her true market value.

Second, there is no indication of any extraordinary outlay of expenses by

Plaintiffs' counsel.  Aside from the filing fee for the Complaint, the only reported

expenses incurred by Plaintiffs' counsel were Westlaw research expenses of

approximately $1,000.00.  Moreover, this litigation was far from protracted.  The

Complaint was filed on May 18, 2020, a preliminary injunction was entered on

July 2, 2020, the Supreme Court of Georgia ruled on the certified question from

the Eleventh Circuit on October 8, 2020, and the Eleventh Circuit affirmed the

order of this Court granting the preliminary injunction on October 27, 2020.  From

beginning to end, the case took just over five months.

Third, there will be no exceptional delay in the payment of fees.  The

Court's Order awarding fees is being filed within six months of the filing of

Plaintiffs' specification of fees for the district court proceeding, and just over two

months since the Eleventh Circuit referred the appellate fee request.

Consequently, because Plaintiff fails to present any evidence that meets one of the three limited exceptions permitting an upward enhancement from the lodestar for exceptional results, Perdue, 555 U.S. at 554-56, Plaintiffs' request for an upward adjustment of the fee award is **DENIED**.

VI.   **CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED** as follows:

(1)   Plaintiffs' Motion for Permanent Injunction [Doc. 58] is **DENIED AS MOOT**;

(2)   Defendants' Motion to Dismiss [Doc. 63] is **GRANTED**;

(3)   Plaintiffs' Special Motion for Award of Costs and Attorneys' Fees [Doc. 24] is **GRANTED IN PART and DENIED IN PART**;

(4)   Plaintiffs' Second Corrected Application for Attorneys' Fees [Doc. 60] is **GRANTED IN PART and DENIED IN PART**; and

(5)   Plaintiffs' Supplement to Fee Petitions Requesting Upward Adjustment of Award [Doc. 65] is **DENIED**.

This Court **AWARDS** Plaintiffs $101,910.00[11] in attorneys' fees and costs as prevailing parties under 42 U.S.C. § 1988.

The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED** this ___11th___ day of February, 2021.

_Mark H. Cohen_
MARK H. COHEN
United States District Judge

---

[11] This is the total of $68,736.25 in fees for work performed in this Court, $32,773.75 for work performed in the Eleventh Circuit and Supreme Court of Georgia, and $400.00 in costs for filing the Complaint.

31